UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL NO. 24-CR-127 (RBW)** |
| v. | |
| **RODNEY BAGGOTT and KIMBERLY BOWENS,** | |
| Defendants. | |

## GOVERNMENT'S REPLY IN SUPPORT OF ITS OMNIBUS PRETRIAL MOTIONS

The United States of America respectfully submits this reply in support of its omnibus pretrial motions (ECF 37) and in response to Mr. Baggott's opposition to those motions (ECF 42).

First, Mr. Baggott is incorrect in asserting that proof of the Aggravating Circumstance for his prior manslaughter conviction cannot be submitted to a jury. Binding Supreme Court precedent indicates that it must be presented to a jury. Second, Mr. Baggott's objections to the Government's 404(b) evidence are unpersuasive. Each of the noticed pieces of evidence is offered for a non-propensity purpose and should be admitted. Finally, it is not premature to resolve the government's motions to preclude evidence of the victim's criminal history and to require a proffer of facts for any self-defense or third-party perpetrator theory. The Federal Rules of Evidence preclude mention of the victim's criminal history in a case such as this. And evidence or argument of affirmative defenses should not be put before a jury, particularly in opening statements, without a proper factual basis. This is a trial involving one of the most serious offenses that an individual can commit. The parties should be prepared well in advance of that trial and understand what evidence will and will not be admitted.

1

> I. **Under Supreme Court Precedent, the Jury Must Find that the Aggravating Circumstance in D.C. Code § 22-2104.01 Applies**

To start, the defense contests whether the jury must find that the Aggravating Circumstance for a prior murder conviction applies. The Grand Jury found that the aggravating circumstance in D.C. Code § 22-2104.01(b)(12) applied because Mr. Baggott had a previous conviction for voluntary manslaughter and had been convicted and sentenced before the murder in this case. The defense now argues that these facts must be decided at a "separate sentencing procedure," which under the D.C. Code "shall be conducted as soon as practicable after the trial has been completed to determine whether to impose a sentence of more than 60 years up to, and including, life imprisonment." Def. Mot. at 5 (ECF 42).

While the government agrees that the Court must hold a separate sentencing proceeding to find this aggravating circumstance, the facts underlying the aggravating circumstance must be found by a jury because the aggravating circumstance permits an increased sentence. *See Apprendi v. New Jersey*, 530 U.S. 466 (2000). *Apprendi* requires that for any fact that enhances a sentence, a jury must find that fact. *Id.* at 490. To be sure, the Supreme Court has left open an exception for a judge to find the "fact of a prior conviction." *See Almendarez-Torres v. United States*, 523 US. 224, 246-47 (1998). But more recently, in *Erlinger v. United States*, the Supreme Court narrowed the *Almendarez-Torres* exception, requiring that a jury, not a judge, find the fact that convictions occurred on different dates for the Armed Career Criminals Act enhancement to apply. 602 U.S. 821, 834 ("There is no doubt what the Constitution requires in these circumstances: Virtually any fact that increases the prescribed range of penalties to which a criminal defendant is exposed must be resolved by a unanimous jury beyond a reasonable doubt") (cleaned up). Even more, *Erlinger* called into question the *Almendarez-Torres* exception and emphasized that this exception is narrowly limited to the question of a prior conviction. *Id.* In fact, *Erlinger* rejected the argument

2

that a judge may necessarily also find what jurisdiction the underlying offense occurred in and the date it happened. *Id.*

Here, for the aggravating circumstance to apply, a factual finding must be made that Mr. Baggott had been convicted and sentenced "at the time of the commission of the murder." After *Erlinger*, this question of timing is one that the jury must decide.

This practice is consistent with how § 22-2104.01 has been applied in D.C. Superior Court. The D.C. Court of Appeals has, for example, held that the jury must find the facts necessary for sentencing under these aggravating circumstances. *See Robinson v. United States*, 890 A.2d 674, 685 (D.C. Ct. App. 2006). And in practice, judges in D.C. Superior Court have submitted facts to the jury necessary to decide whether an aggravating circumstance in § 22-2104.01 exists. *See, e.g., Bellamy v. United States*, 296 A.3d 909, 920 (D.C. Ct. App. 2023). In *Bellamy*, for example, the court submitted to the jury a special verdict form to ask whether the aggravating circumstance for an "especially heinous, atrocious or cruel" murder applied. *Id.*

In any event, the Court need not reach this constitutional question as this conviction and the underlying facts are admissible under Rule 404(b), as the government argues in its original motion (ECF 37) and below.[1]

II.     **The Noticed Rule 404(b) Evidence is Admissible.**

The Government's noticed Rule 404(b) evidence is admissible. The Government must prove at trial that Mr. Baggot committed this murder (identity), that he had an intent to kill, and that he formed the premeditation and deliberation necessary for first-degree murder. The

---

[1] If the Court excludes this evidence under Rule 404(b), *Erlinger* recognizes that bifurcating proceedings may be appropriate. 602 U.S. at 847-48. The Government believes the proper course of action is still to require a jury to decide this question or for the defendant to formally waive a jury as to this question.

Government's noticed 404(b) evidence provides critical, non-propensity evidence of the defendant's identity, intent, knowledge, and lack of mistake, and therefore should be admitted.

**Mr. Baggott's Prior Manslaughter Conviction.** Mr. Baggott's prior manslaughter conviction is critical to proving his intent to kill and his ability to premeditate and deliberate in short order after a minor verbal dispute. In response, Mr. Baggott tries to distinguish the Government's various cited cases on their facts. Of course, each case is factually different from what occurred here. But the legal analysis in each of these cases supports the Government's argument: Mr. Baggott's prior use of a firearm to kill someone by shooting that person in the head is relevant to establishing his state of mind, including his intent to kill and his premeditation and deliberation in doing so. *See United States v. Bell*, 795 F.3d 88, 99 (D.C. Cir. 2015) (holding prior murder was relevant to defendant's familiarity with firearms); *United States v. Slatten*, 395 F. Supp. 3d 45, 97 (D.D.C. 2019) (holding previous use of a hair-triggered rifle bears on intent and motive in a first-degree murder case); *United States v. Slough*, 22 F. Supp. 3d 16, 23 (D.D.C. 2014) (holding prior episodes of "indiscriminate, yet deliberate, shooting" was evidence of defendant's state of mind). The logic of these cases supports the Government's assertion here that Mr. Baggott's prior voluntary manslaughter conviction will be highly relevant to a jury in deciding whether he had an intent to kill and formed the required premeditation and deliberation for first degree murder after a short dispute.

**The text to Ms. Bowens that he needed to "put a bullet" in her head.** For similar reasons, Mr. Baggott's text message to Ms. Bowens a week after the shooting that he needed to "put a bullet in [her] whore ass head" is admissible. Mr. Baggott responds that it is "clear" that this message "had nothing to do with the shooting of V1." ECF 42 at 9. To be sure, the argument between Mr. Baggott and Ms. Bowens was not about the shooting of the victim here. But that

argument misses the point. It is Mr. Baggott's focus on shooting "in the head" that adds relevancy here to proving his mental state. This text message shows that when Mr. Baggott is confronted with a minor dispute—like the one he had in Dupont Circle with the victim here—he resorts to shooting someone in the head (or threatening to do so).

**Mr. Baggott's possession of a different gun while driving the same car used in the murder.** Mr. Baggott's possession of a different gun when arrested in Maryland while driving the same car is admissible to prove identity, intent, and absence of mistake. While Mr. Baggott asserts that identity will not be at issue in this case, ECF 42 at 10, the Government still bears the burden of proving that Mr. Baggott committed the murder and possessed the firearm. *See, e.g., United States v. McCarson*, 527 F.3d 170, 173 (D.C. Cir. 2008) (upholding admission of Rule 404(b) evidence and noting that a defendant's "choice not to put at issue element of the charged offense is irrelevant to the admissibility of evidence offered to prove that element"). In any event, the fact that Mr. Baggott keeps a gun ready to go on the driver's side of this car provides further evidence of his intent to use the gun and his knowledge of the gun.

Moreover, Mr. Baggott's possession of a different gun is relevant to proving his possession and knowledge of the gun found in Ms. Bowens' apartment that was linked to the murder. *See id.* (upholding admission of two prior gun convictions and two drug distribution convictions when drugs and gun were found in the defendant's girlfriend's apartment).

Mr. Baggott suggests that *United States v. Linares*, 367 F.3d 941 (D.C. Cir. 2004) control the outcome here. But *Linares* involved an entirely different situation. In *Linares*, for example, a police officer watched the defendant fire the gun from his car, and then two police officers watched him toss the gun. *Id.* at 943-44. *Linares* was then arrested on scene. *Id.* at 944. Here, no eyewitness (and certainly no police officer) is likely to identify Mr. Baggott as the shooter, and he was arrested

about a month later after an investigation. Unlike *Linares*, Mr. Baggott was not caught "redhanded" firing the gun. *See United States v. Agramonte*, 304 F. App'x 877, 879 (D.C. Cir. 2008) (distinguishing *Linares* and upholding admission of Rule 404(b) evidence because the defendant was not "caught redhanded with the contraband in his possession" and the defense could meaningfully challenge the government's evidence through cross-examination). And, in *Linares*, the defendant was not charged with a crime that put "intent" at issue, so the government could not rely on intent as a basis for admission. 367 F.3d at 948 (noting that intent is not at issue in a 922(g)(1) case). Here, though, Mr. Baggott's intent is directly at issue with the first-degree murder charge, and the fact that he had a different gun in the same car is relevant to proving that intent. *See United States v. Pettiford*, 517 F.3d 584, 589 (D.C. Cir. 2008) (distinguishing *Linares* when the government had to prove an "intent to distribute" drugs).

**Ms. Bowens' text to Mr. Baggott that she let him store guns and drugs in her house and the evidence from the Cielo Apartments.** Two pieces of Rule 404(b) help prove Mr. Baggott's knowledge and possession of the murder weapon found in Ms. Bowens' apartment. First, Ms. Bowens' sent Mr. Baggott a text message less than two months before the shooting, implying that she got Mr. Baggott a car and let him bring drugs and guns in her house. Second, evidence from the Cielo Apartments proves that Mr. Baggott was residing there during the relevant periods (between the murder on January 30, 2024, and the search warrant on March 3, 2024). Mr. Baggott appears to contest that this is a constructive possession case as to the possession of the murder weapon. But the gun was found in an apartment leased by Ms. Bowens, and Mr. Baggott was not in immediate possession of the weapon on the day of the search warrant. So, this evidence is relevant to proving Mr. Baggott's knowledge and possession of the gun.

The text message is also inextricably intertwined with the charged offense. Mr. Baggott is charged with possessing the gun found at Ms. Bowens' leased apartment. The gun was found near drugs. A few months before law enforcement found that gun, Ms. Bowens sent a text message implying that she was letting him store guns and drugs at her apartment. This text message is thus direct evidence that Mr. Baggott possessed the gun in the apartment, as charged in Count 7 of the superseding indictment.

Although Mr. Baggott argues that some of this evidence is hearsay, non-hearsay methods (such as calling neighbors with personal knowledge to testify) exist that would satisfy the hearsay rules. And the barring notice does not present hearsay issues, as it would be used not to prove the truth of the matter asserted but to show that Mr. Baggott had been present in the apartment building.

**The Gun Offender Registry Order.** Mr. Baggott objects to admission of his signed gun offender registry, noting that he will stipulate that he has a prior felony conviction. But after *Rehaif v. United States*, the Government must also prove that they defendant *knew* he was a felon. 588 U.S. 225, 237 (2019). Mr. Baggott's signature on the gun offender registry order proves his knowledge and is admissible as to that point.

### III.    Mr. Baggott's Prior Conviction is Admissible under Rule 609

The prior manslaughter conviction should be admitted under Rule 609 if Mr. Baggott testifies. The question is whether the probative value outweighs the prejudicial effects. Fed. R. Evid. 609(a)(1)(B). It does. The fact of this conviction will be highly probative to the jury in evaluating Mr. Baggott's testimony should he testify. *See United States v. Lewis*, 626 F.2d 940, 950 (D.C. Cir. 1980) ("Courts should be reluctant to exclude otherwise admissible evidence that would permit an accused to appear before a jury as a person whose character entitles him to complete credence when his criminal record stands as direct testimony to the contrary.").

IV. **The Motions to Exclude the Victim's Criminal History and Require a Pre-Trial Proffer for Self-Defense or Third-Party Perpetrator Theories are Not Premature.**

The remaining motions concerning the victim's criminal history and the use of a self-defense or third-party perpetrator defense at trial are not premature and should be decided before trial. Given the seriousness and complexity of this trial, these issues can and should be resolved early to provide the parties with the necessary time to prepare for trial and avoid wasting the time of jurors.

A. **The Victim's Criminal History**

This issue should be decided before trial, as it requires a straightforward application of the Federal Rules of Evidence. *See United States v. Sutton*, 2024 WL 278070, at *14 and *14 n4 (D.D.C. January 25, 2024) (excluding victim's criminal history before trial and noting that "courts routinely gatekeep the admission of evidence of a deceased's pertinent character traits, most obviously in self-defense cases"). Here, the victim's criminal history is not relevant and is barred by Federal Rules of Evidence 403, 404(a) and 405.

The defense cites *United States v. Akers*, a D.C. Court of Appeals case noting that a victim's specific acts of violence are admissible on the first aggressor issue in a self-defense case. 374 A.2d 874, 877 (D.C. 1982). But *Akers* is not applicable to federal cases and is inconsistent with the Federal Rules of Evidence. Because the Federal Rules of Evidence apply here, the victim's criminal history—unless known to the defendant—is inadmissible here.

This issue is not premature. A pre-trial ruling is appropriate here to ensure adherence to the Federal Rules of Evidence before opening statements. If the Court reserves ruling on this issue, the Government requests that neither party be permitted to mention the victim's criminal history in opening statements.

B.  **The Self-Defense and Third-Party Perpetrator Defenses[2]**

Requiring a proffer before self-defense is raised is not premature. If the defense is proceeding on a self-defense theory, then the defense is likely to raise it in opening statements. Because the Government contends there would be insufficient evidence here for a self-defense claim, the defense should not be allowed to open on this theory until the Court is satisfied that there is a sufficient basis for this claim. *See, e.g., United States v. Cramer*, 532 F. App'x 789, 791 (9th Cir. 2013) ("If a defendant cannot proffer legally sufficient evidence of each element of an affirmative defense, then he is not entitled to present evidence in support of that defense at trial."); *United States v. Baez*, 695 F. Supp. 3d 94, 108 (D.D.C. 2023) (precluding defendant before trial from arguing self-defense).

Moreover, the self-defense claim is critical to evaluating the admissibility of the Government's Rule 404(b) evidence: if the defense is raising a self-defense claim, much of this evidence is even more probative. For example, both Mr. Baggott's previous conviction for shooting someone in the head and his threat to do the same to Ms. Bowens shortly after this murder become even more probative as to the defendant's intent and in showing that this murder was not self-defense. The fact that Mr. Baggott had a different gun in the driver's side of the same car also becomes even more probative in he tries to argue self-defense. So too with the Rule 609 evidence. If Mr. Baggott testifies that he acted in self-defense, his prior conviction would be even more probative to a jury trying to weigh his testimony.

---

[2] The Government will focus its reply on self-defense, as Mr. Baggott stated in his motion response that "identity will not be a disputed issue in the trial." *See* ECF 42 at 10. Defense counsel also stated at the prior motions hearing that Ms. Bowens will not be an alternate suspect. Of course, if that changes, the Government requests that the Court require a proffer of facts before the defense can argue evidence of a third-party perpetrator.

Thus, pre-trial resolution of whether a self-defense case can be made on the evidence here—particularly where no weapon was recovered from the victim or his car and it was Mr. Baggott who chose to stop at a green light and initiate a confrontation with the victim before shooting him—is necessary.

## CONCLUSION

For these reasons, the Court should grant the Government's omnibus pretrial motions.

Respectfully submitted,

EDWARD R. MARTIN, JR.
United States Attorney

By: */s/ Ryan Lipes*
Ryan Lipes, N.Y. Bar No. 5404843
Special Assistant United States Attorney
Cameron Tepfer, D.C. Bar No. 1660476
Assistant United States Attorney
601 D Street, N.W.
Washington, D.C. 20530
(202) 794-4312
Ryan.lipes@usdoj.gov